UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
NORTH AMERICAN FOREIGN TRADING
CORP.,

                  Plaintiff,

            -against-

                                                      05 Civ. 4807 (SAS) (KNF)

MITSUI SUMITOMO INSURANCE USA,
INC., f/k/a MITSUI MARINE AND FIRE
INSURANCE COMPANY OF AMERICA and
MSI CLAIMS (USA), INC.,

                  Defendants.
-----------------------------------------------------------------x

### AFFIDAVIT OF ROBERT SCHWEITZER IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Robert Schweitzer, being duly sworn, deposes and says:

1.     I am the Vice President of plaintiff North American Foreign Trading Corp. ("NAFT"). I respectfully submit this affirmation in support of NAFT's motion for summary judgment.

### Background

2.     NAFT is a New York corporation engaged in the business of importing consumer electronics, including cordless telephones. NAFT maintains offices at 105 Madison Avenue, New York, New York.

3.     NAFT routinely purchases marine insurance to cover the importation and storage of consumer electronic goods. On March 1, 2001, NAFT obtained from Mitsui Sumitomo Insurance USA, Inc., then known as Mitsui Marine and Fire Insurance Company of America ("Mitsui"), an "All Risk" marine cargo policy entitled "Open Cargo Policy No. OCMM 01000" (the "Policy") through NAFT's insurance broker, Gregory Taylor at Roanoke Trade

Services, Inc. ("Roanoke"). I am advised that a copy of the Policy is attached as Exhibit 1 to Mr. Taylor's Affidavit.

### NAFT's Claim Under The Mitsui Policy

4. One of the manufacturers in the Orient from which NAFT has purchased consumer electronics (mainly cordless telephones) is Cidmate Technology, Inc. ("Cidmate"). Cidmate operated a manufacturing facility in Zengtian Industry Area, Jiekow, Changan Town, Dongguan City, Guangdong Province in the Peoples Republic of China (the "Cidmate Facility"). I am advised that Endorsement 19 to the Policy includes the Cidmate Facility as an "Approved Warehouse – Foreign" under the Policy.

5. NAFT's dealings with Cidmate included not only the purchase of newly manufactured telephones, but also the return to Cidmate of telephones previously imported by NAFT from Cidmate, then distributed in the United States, and later returned by NAFT from the United States to the Cidmate Facility for repair, upgrade, replacement and/or repackaging. In other words, before these goods could be resold in the United States, it was necessary to export them from the United States back to the Cidmate Facility for refurbishment, and then ship them again to the United States. A so-called "perpetual inventory report" that was prepared by NAFT in the normal course of business, and which is attached as Exhibit 8 to the affidavit of Gregory Taylor in this action (the "Taylor Affidavit"), shows that between March 2002 and March 2004, NAFT returned over $10 million in inventory to the Cidmate Facility that was refurbished and then sent back to NAFT's warehouses in the United States.

6. In April 2004, NAFT received information from an inspection service in China that it was unable to gain entry to the Cidmate Facility to perform a routine inspection of goods that Cidmate was scheduled to ship to NAFT. This was unusual. I therefore called Cidmate to see if a problem had arisen. However, I was unable to reach anyone at Cidmate, and

all of my efforts to contact that company proved futile. As a result, NAFT asked Chinese attorneys known as the "Horizon Law Firm" to investigate the status of Cidmate and the merchandise that NAFT had returned to the Cidmate Facility for refurbishment. But the Horizon Law Firm also was unable to gain entry to the Cidmate Facility. I therefore traveled to China to work with our counsel in investigating the status of the Cidmate Facility. As reflected in a letter from the Horizon Law Firm, dated April 22, 2004 and attached as Exhibit 2 to the Taylor Affidavit, it was learned that all merchandise had been improperly removed from the Cidmate Facility, and that the matter had been referred to the "Investigation Department of Customs Authority at the Dongguan City."

7. On April 28, 2004, NAFT notified our insurance broker, Gregory Taylor, by fax of the disappearance of telephones from the Cidmate facility, and forwarded to him the letter of April 22, 2004 from the Horizon Law Firm. A copy of the April 28, 2004 fax is attached as Exhibit 2 to the Taylor Affidavit. NAFT also asked Mr. Taylor to advise Mitsui that NAFT was submitting a claim under the Policy for loss of the merchandise from the Cidmate Facility. I understand that such a claim was submitted to Mitsui on or around May 3, 2004.

### Cooperation with Mitsui's Investigation

8. After submitting its claim, NAFT cooperated fully with Mitsui and its "forensic" accountants, Meaden & Moore, in their investigation into NAFT's claim. G. James Zerka, an accountant employed by Graf Repetti & Co., LLP who is stationed in our office on a full time basis, supervised NAFT's efforts to make available any books and records requested by Mitsui. The correspondence and emails attached to the Taylor Affidavit reflect the numerous instances between April 2004 and April 2005 when NAFT provided books and records to Meaden & Moore, and the firm's accountants visited our offices to inspect any NAFT files they wished.

9.  One of the documents that NAFT provided to Mitsui was the "perpetual inventory" report that tracked all merchandise returned by NAFT to Cidmate for refurbishment from March 2002 through March 2004. (See Taylor Ex. 8). The report shows (on the last page) that of the more than $11 million in merchandise returned by NAFT to Cidmate, there were 66,670 telephones, worth $1,267,078, that Cidmate received but never returned to NAFT. Since the perpetual inventory report showed the number of phones missing from the Cidmate Facility, Mr. Taylor submitted it to Mitsui as NAFT's "preliminary claim statement." (See Taylor Ex. 8). The business records of NAFT upon which the inventory report is based were made available to Mitsui's accountants in the course of its year long investigation. My understanding is that, under the Policy, the dollar figure for missing goods shown on the inventory report ($1,267,078) exceeds a cap of $1,250,000 pertaining to the Cidmate Facility in the Policy (See Endorsement 19), and that a 10% deductible also applies (see Special Warehouse Coverage Endorsement, ¶ 15). As a result, the final amount of NAFT's claim is $1,125,000.

## The Declination Letter

10. Despite our cooperation with Mitsui's numerous demands, on May 10, 2005, NAFT received a letter from Mitsui (forwarded by Mr. Taylor) indicating that the insurer had denied coverage for the telephones that had been improperly removed from the Cidmate Facility. A copy of the letter is attached to the Taylor Affidavit as Exhibit 17. Mitsui's ground for denial is unrelated to any of the subjects that Meaden & Moore investigated for nearly a year. In its declination letter, Mitsui acknowledged that the missing goods had been returned by NAFT to Cidmate for repair or upgrade, and never returned to NAFT. Mitsui then quoted various sections of the Policy claimed to exclude coverage, but gave no explanation of the relevance of those provisions.

11. One of the Policy provisions quoted in Mitsui's declination letter is Section 7(b) of the Special Warehouse Coverage Endorsement. Section 7(b) makes reference to merchandise acquired by the insured either "C.I.F.," which I understand refers to "cost, insurance and freight," or through "spot" purchases. However, the missing merchandise that is the subject of NAFT's claim was not acquired through "C.I.F." or spot purchases. Rather, as explained above, the missing inventory was all initially imported by NAFT from Cidmate, and then returned by NAFT to Cidmate for refurbishment.

## Conclusion

12. I believe that Mitsui has sought to delay payment of a meritorious claim through its year long investigation, and now this litigation. I respectfully request that the Court grant summary judgment in NAFT's favor.

_____
ROBERT SCHWEITZER

Sworn to before me

this 6th day of October, 2005.

_____
Notary

JOSEPH F. DONLEY
Notary Public, State of New York
No. 0200-4794791
Qualified in New York County
Commission Expires November 30, 20 06

10165935.3                              5